**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**


Willard Douglas
and Diane Douglas

     v.                                       Civil No. 13-cv-101-LM
                                                 Opinion No. 2013 DNH 071
U.S. Bank National
Association and Wells
Fargo Home Mortgage


**O R D E R**

In a case that has been removed from the New Hampshire
Superior Court, Willard and Diane Douglas ("the Douglases" or
"petitioners") petitioned the court to enjoin a foreclosure sale
that was scheduled for February 11, 2013.  Petitioners claimed
that if respondents held the sale without considering their
request for a loan modification, they would breach the implied
covenant of good faith and fair dealing.  Before the court is
respondents' motion to dismiss for failure to state a claim upon
which relief can be granted.  Petitioners object.  For the
reasons that follow, respondents' motion to dismiss is granted.

**The Legal Standard**

Ruling on a motion to dismiss for "failure to state a claim
upon which relief can be granted," Fed. R. Civ. P. 12(b)(6),
requires the court to conduct a limited inquiry, focusing not on

"whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." Scheuer v. Rhodes, 416 U.S. 232, 236 (1974). When considering such a motion, a trial court "accept[s] as true all well-pled facts in the complaint and draw[s] all reasonable inferences in favor of plaintiffs." Plumbers' Union Local No. 12 Pension Fund v. Nomura Asset Acceptance Corp., 632 F.3d 762, 771 (1st Cir. 2011) (quoting SEC v. Tambone, 597 F.3d 436, 441 (1st Cir. 2010)). To survive a Rule 12(b)(6) motion, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" González-Maldonado v. MMM Healthcare, Inc., 693 F.3d 244, 247 (1st Cir. 2012) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

### Background

The facts in this section are drawn from the petition that initiated this case, augmented by documents appropriately incorporated therein. See Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 15 (1st Cir. 2009) (citing Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc., 524 F.3d 315, 321 (1st Cir. 2008)); see also Banco Santander de P.R. v. Lopez-Stubbe (In re Colonial Mortg. Bankers Corp.), 324 F.3d 12, 19 (1st Cir. 2003) ("matters of public record are fair game in adjudicating Rule

12(b)(6) motions, and a court's reference to such matters does not convert a motion to dismiss into a motion for summary judgment") (citing Boateng v. InterAmerican Univ., Inc., 210 F.3d 56, 60 (1st Cir. 2000)).

In 2006, the Douglases received a home loan from Mortgage Lenders Network USA, Inc. ("MLN").  They gave a mortgage to secure their promise to repay the loan to Mortgage Electronic Registration Systems, Inc. ("MERS").  MERS assigned the mortgage to U.S. Bank National Association ("U.S. Bank").  Wells Fargo Home Mortgage services the Douglases' loan.  The parties appear to agree that the Douglases fell behind on their payments.

At some point, the petition does not say when, U.S. Bank scheduled a foreclosure sale of the property the Douglases mortgaged.  In December of 2012, the Douglases applied for a loan modification.  About a month later, one of the respondents (the petition does not say which one), told the Douglases that their application had been prequalified for review and asked them to provide updated financial information.  On February 6, 2013, the Douglases provided respondent with the information it requested.

The next day, upon learning that the foreclosure sale was still scheduled to go on, the Douglases filed a petition in the New Hampshire Superior Court seeking "a Preliminary, Temporary, and Permanent Injunction preventing the sale on February 11,

2013 to allow the Petitioner an opportunity to resolve this issue with the Respondent in a timely manner." Notice of Removal, Attach. 1 (doc. no. 1-1), at 3. They base their petition on the following legal theory:

> Because Respondent represented that Petitioner has been pre-qualified to be reviewed for a loan modification application, and that Respondent would in fact review Petitioner's loan modification application, and because Petitioner has submitted a complete loan modification application, Respondent has breached the covenant of good faith and fair dealing by not postponing or cancelling the foreclosure sale date scheduled for Monday, February 11, 2013 so that Petitioner's loan modification application may be processed and Petitioner may be given either an acceptance or denial of his application.

Id. at 2. The same day the Douglases filed their petition, the Superior Court granted them a temporary injunction, see Resp't's Mot. to Dismiss, Ex. 4 (doc. no. 7-4), and issued an order of notice indicating that a hearing on the petition would be held on March 7, 2013, see State Ct. Rec. (doc. no. 6) 9. On March 5, 2013, respondents removed the case to this court. The record here includes no further information on the current status of either the foreclosure or the Douglases' application for a loan modification.

## Discussion

Respondents move to dismiss. They argue that the implied covenant of good faith and fair dealing did not require them to: (1) modify the terms of the Douglases' loan; or (2) consider the

4

Douglases' application for a loan modification.  Petitioners respond by: (1) disavowing any argument that the implied covenant required respondents to modify their loan; and (2) contending that the covenant did require respondents to consider their application for a loan modification.  Respondents have the better argument.

In New Hampshire, "every agreement [includes] an implied covenant that the parties will act in good faith and fairly with one another."  Birch Broad., Inc. v. Capitol Broad. Corp., 161 N.H. 192, 198 (2010) (citing Livingston v. 18 Mile Point Drive, Ltd., 158 N.H. 619, 624 (2009)).  As the New Hampshire Supreme Court recently observed:

> there is not merely one rule of implied good-faith
> duty, but a series of doctrines, each of which serves
> a different function.  The various implied good-faith
> obligations fall into three general categories: (1)
> contract formation; (2) termination of at-will
> employment agreements; and (3) limitation of
> discretion in contractual performance.

Birch, 161 N.H. at 198 (citations omitted).  The court went on to describe the third category this way: "While the third category is comparatively narrow, its broader function is to prohibit behavior inconsistent with the parties' agreed-upon common purpose and justified expectations as well as 'with common standards of decency, fairness and reasonableness.'"  Id. (quoting Livingston, 158 N.H. at 624).

In its seminal case on the implied covenant of good faith and fair dealing, the New Hampshire Supreme Court explained that

> within the narrower confines of the third category of cases . . . the obligation of good faith performance is better understood simply as excluding behavior inconsistent with common standards of decency, fairness, and reasonableness, and with the parties' agreed-upon common purposes and justified expectations.

Centronics Corp. v. Genicom Corp., 132 N.H. 133, 140 (1989) (citing Robert S. Summers, The General Duty of Good Faith – Its Recognition and Conceptualization, 67 Cornell L. Rev. 810, 820, 826 (1982); Restatement (Second) of Contracts § 205 cmt. a). After surveying a number of its own cases, the court concluded:

> Despite the variety of their fact patterns, these cases illustrate a common rule: under an agreement that appears by word or silence to invest one party with a degree of discretion in performance sufficient to deprive another party of a substantial proportion of the agreement's value, the parties' intent to be bound by an enforceable contract raises an implied obligation of good faith to observe reasonable limits in exercising that discretion, consistent with the parties' purpose or purposes in contracting.

Centronics, 132 N.H. at 143.

The court then set out four questions that are raised by a claim that a contracting party has breached the covenant of good faith in contract performance.  See Centronics, 132 N.H. at 144. The first question is this: "Does the agreement ostensibly allow to or confer upon the defendant a degree of discretion in performance tantamount to a power to deprive the plaintiff of a

substantial proportion of the agreement's value?"  Id.  If the agreement does not confer such discretion, then no claim for breach of the covenant of good faith in contract performance can lie.  See id. at 144-45.

Since the start of 2012, three different judges of this court have been faced with claims similar to the one petitioners make here, and all three have dismissed those claims.  In Moore v. Mortgage Electronic Registration Systems, Inc., 848 F. Supp. 2d 107 (D.N.H. 2012), Judge Laplante dismissed a claim for breach of the implied covenant of good fair dealing and explained his decision in the following way:

> The Moores also suggest that the defendants breached the covenant of good faith and fair dealing by refusing to modify the mortgage, or to engage in good-faith negotiations regarding modification. Courts have generally concluded, however, that the covenant of good faith and fair dealing in a loan agreement cannot be used to require the lender to modify or restructure the loan.  See, e.g., FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 100-01 (1st Cir. 2009) (applying Massachusetts law); Rosemont Gardens Funeral Chapel-Cemetary, Inc. v. Trustmark Nat'l Bank, 330 F. Supp. 2d 801, 810-11 (S.D. Miss. 2004) (collecting cases).  These decisions are consistent with New Hampshire law that the [implied] covenant cannot be used to rewrite a contract to avoid harsh results.  See Olbres [v. Hampton Co-op. Bank], 142 N.H. [227,] 233 [(1997)].  The court sees no reason to believe that the New Hampshire Supreme Court would nevertheless allow the implied covenant to be used to require the parties here to rewrite their contract.

Moore, 848 F. Supp. 2d at 129-30 (parallel citations omitted, emphasis added).

In Schaefer v. IndyMac Mortgage Services, the plaintiff "concede[d] that the covenant of good faith and fair dealing cannot be used to require a lender to modify or restructure a loan," No. 12-cv-159-JD, 2012 WL 4929094, at *6 (D.N.H. Oct. 16, 2012), but argued "that he was entitled to a full and fair consideration of his application for a modification, and that the defendants['] failure to consider his application breached the implied covenant of good faith and fair dealing," id.  After explaining that Moore "addressed allegations that a lender refused to . . . engage in good-faith negotiations regarding modification," Schaefer, 2012 WL 4929094, at *6 (internal quotation marks omitted), Judge DiClerico rejected the plaintiff's argument that he was entitled by the covenant of good faith and fair dealing to a full pre-foreclosure consideration of his application for a modification, see id.

Judge Barbadoro's decision in Ruivo v. Wells Fargo Bank, N.A., No. 11-cv-466-PB, 2012 WL 5845452 (D.N.H. Nov. 19, 2012), is to similar effect.  Judge Barbadoro first explained that "[t]he duty of good faith and fair dealing applies . . . only when the agreement grants a contracting party discretion in performing his duties under the agreement and an unreasonable exercise of that party's discretion causes harm to the other contracting party."  Id. at *3 (citing Scott v. First Am. Title Ins. Co., No. 06-cv-286-JD, 2007 WL 135909, at *5 (D.N.H. Jan.

17, 2007); Ahrendt v. Granite Bank, 144 N.H. 308, 312-313
(1999)).  He then noted that the plaintiff in the case before
him "appear[ed] to argue that Wells Fargo [was] liable because
it abused the discretion that a party to a contract always has
to agree to another party's request to modify the contract."
Ruivo, 2012 WL 5845452, at *3.  In reliance upon Moore, Judge
Barbadoro rejected that argument and dismissed the plaintiff's
claim.  See Ruivo, 2012 WL 5845452, at *3-4.

Moore, Schaefer, and Ruivo are all on point and persuasive.
Those decisions strongly counsel in favor of dismissing the
Douglases' petition.  Petitioners attempt to avoid Moore and its
progeny by arguing that their petition

> alleges facts sufficient to state the claim that
> [respondents] have breached the covenant because
> [they] did not consider the [petitioners'] loan
> modification application after [they] exercised their
> discretion within the terms of the mortgage contract
> to hold off on foreclosure for the common purpose of
> deciding whether to continue the mortgage contract by
> considering whether or not the [petitioner] qualified
> for a loan modification.

Pet'r's Mem. (doc. no. 9-1) 2 (emphasis in the original).  In
petitioners' view,

> because [respondents] exercised their discretion
> within the mortgage contract to hold off on
> foreclosure for the common purpose of continuing the
> mortgage contract by determining whether
> [petitioners] qualified for modification, but then
> proceeded to foreclose before considering said
> application, [respondents'] behavior breached the
> covenant because it was "inconsistent with the

parties' agreed-upon common purpose and justified
expectations."

Id. (quoting Galvin v. EMC Mortg. Corp., No. 12-cv-320-JL, 2013
WL 1386614, at *11 (D.N.H. Apr. 4, 2013)).  Petitioners conclude
by arguing:

> [T]he [petitioners'] ex parte injunction does
> articulate how the [respondents'] discretion was
> unreasonably exercised.  The ex parte in[j]unction
> implies that [respondents] unjustly exercised the
> discretion conferred by the mortgage when [respondent]
> offered [petitioners] the option to pursue a loan
> modification, and then neglected to follow through
> with the offer.  . . .  The [petition] references the
> loan modification, the common purpose of which is to
> allow the borrowers to continue to pay the bank money
> owed, potentially at a lower interest rate and over a
> longer period of time than the original terms of the
> agreement, so that the bank can get its return on its
> investment and so that the borrowers can stay in their
> home.  Because the lender offered a loan modification
> to the [petitioners], [petitioners] had a justified
> expectation, not to necessarily be granted a loan
> modification, but to be reviewed for one based on
> whether it made financial sense for the bank and for
> the borrower.  If the [petitioners] had been reviewed
> and accepted for a loan modification, the foreclosure
> would not have proceeded.

Pet'r's Mem. (doc. no. 9-1) 5 (citation to the record omitted,
emphasis in the original).

Petitioners appear to be arguing that once a respondent
broached the possibility of a loan modification with them, and
they applied for a modification, the respondent was precluded by
the covenant of good-faith contract performance from foreclosing
until after it fully considered the application.  But, Judge

10

DiClerico has rejected a substantially similar argument in

Schaefer.  As he explained,

> because the defendants were not required to consider
> Schaefer's loan modification application, they
> similarly cannot be held liable for preparing to
> foreclose on Schaefer's home while simultaneously
> considering his loan modification application.

2012 WL 4929094, at *6.  Judge DiClerico's reasoning applies

with equal force to the argument petitioners appear to be making

in this case.

In addition, petitioners' argument focuses on the common

purpose of a loan modification and the expectations they

developed as a result of respondents' alleged representations

concerning such relief, but there is no allegation that the

parties ever agreed to a loan modification.  Thus, the only

agreement in this case is the one under which MLN promised to

loan the Douglases $234,000 and the Douglases promised to repay

that loan and to secure that promise by giving a mortgage on the

property they purchased with the money they were loaned.  The

common purposes of that agreement were to: (1) provide the

Douglases with the money they needed to buy a house; and (2)

provide for MLN's repayment.  The Douglases' justified

expectation was that MLN would loan them $234,000, which it did.

MLN's justified expectations, and U.S. Bank's, were that: (1)

the Douglases would repay their loan, which they have not; and

(2) if the Douglases defaulted, the mortgagee would be able to

recover what it was owed by foreclosing on the mortgage securing the Douglases' promise to repay the loan.

Perhaps most importantly, this is not a case involving an agreement that gave respondents discretion in performance such that they could deprive the Douglases of a substantial proportion of the agreement's value.  Like the borrower in Moore, petitioners "do not identify any particular grant of discretion in the mortgage that they believe was exercised unreasonably."  848 F. Supp. 2d at 129; see also Ruivo, 2012 WL 5845452, at *3 (noting that borrower did "not point to any specific provision in the agreement to support her claim").  Rather, their reference to respondents' "discretion within the mortgage contract to hold off on foreclosure," Pet'r's Mem. (doc. no. 9-1) 2, makes their claim identical to the one Judge Barbadoro dismissed in Ruivo.  See 2012 WL 5845452, at *3 (describing borrower's argument that lender was "liable because it abused the discretion that a party to a contract always has to agree to another party's request to modify the contract").  Beyond that, it is undisputed that the Douglases got their loan, which means, necessarily, that they received the full value of their agreement.  That the Douglases later found themselves unable to repay their loan, and may have benefitted from a loan modification, does nothing to undermine the fact that, in the

first instance, they received the loan they bargained for, which was the full value of their agreement.

In sum, the contract in this case did not confer upon respondents a level of discretion that allowed them to deprive the Douglases of a substantial portion of the agreement's value. Thus, petitioners have failed to state a claim for breach of the implied covenant of good faith and fair dealing. See Centronics, 132 N.H. at 144-45. Accordingly, respondents are entitled to dismissal of the Douglases' petition.

### Conclusion

For the reasons detailed above, respondents' motion to dismiss, document no. 7, is granted. The clerk of the court shall enter judgment in accordance with this order close the case.

SO ORDERED.

_____
Landya McCafferty
United States Magistrate Judge

May 6, 2013

cc:   Samuel J. Donlon, Esq.
      Jeremy A. Miller, Esq.
      Michael R. Stanley, Esq.